STATE OF CONNECTICUT *v.* DAVID G. WEAVING
(AC 30999)

Gruendel, Alvord and Peters, Js.

Argued September 2—officially released November 16, 2010

*Heather M. Wood,* deputy assistant public defender, for the appellant (defendant).

*Laurie N. Feldman,* special deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *John J. Davenport,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, David G. Weaving, appeals from the judgment of conviction, following a jury trial, of manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1). On appeal, the defendant claims that (1) prosecutorial impropriety during closing argument deprived him of his right to

due process, (2) the court improperly refused to instruct the jury that he was entitled to assume others using the road would "obey the law," and (3) the court improperly refused to permit argument or instruct the jury with respect to the "lack of a headlamp" on the victim's bicycle. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Shortly before 7 p.m. on April 27, 2007, the defendant was driving his motor vehicle south on Route 69 in Prospect. In Prospect, Route 69 is a residential, two lane road, with one northbound and one southbound lane of travel. Although it was a foggy evening and the road surface was damp, the defendant was traveling at approximately 80 miles per hour, well in excess of the posted speed limit of 45 miles per hour. As he crested a small hill near Radio Tower Road, the defendant came upon another car traveling in his lane at or below the posted speed limit. Approaching a permitted passing zone, the defendant accelerated and began to cross over into the northbound lane in order to pass the slower moving vehicle. Just as he was doing so, the defendant noticed a young boy standing on the pedals of a bicycle near the center of the northbound lane. The boy was dressed in dark clothing, the bicycle he was riding was black and there was no headlamp on the bicycle. The defendant immediately applied his brakes and attempted to steer back into the southbound lane in an effort to avoid hitting the boy. The defendant's speed, however, coupled with the conditions of the roadway, made avoiding the boy impossible. The defendant's vehicle collided with the bicycle, throwing the boy onto the hood and windshield and tossing debris along the side of the road. Despite the efforts of emergency medical personnel and physicians, the boy died from his injuries.

The defendant subsequently was arrested and charged with manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3) and manslaughter in the second degree in violation of § 53a-56 (a) (1).[1] After a jury trial, the defendant was convicted of manslaughter in the second degree.[2] The court imposed a total effective sentence of thirteen years and eight months incarceration, execution suspended after ten years, with three years of probation.[3] This appeal followed. Additional facts will be set forth as necessary.

## I

The defendant's first claim is that prosecutorial impropriety during closing argument deprived him of his right to due process. Specifically, the defendant asserts that the state wrongfully argued to the jury that evidence of the extent of the victim's injuries and of the structural damage to the defendant's car and the victim's bicycle supported the inference that the defendant was driving recklessly at the time of the accident. The defendant maintains that, in the absence of substantiating expert testimony, the state's argument invited the jury to "speculate as to inferences outside its ken"— namely, the speed of the defendant's car—thereby depriving him of a fair trial. We disagree.

The following additional facts are relevant to our resolution of the defendant's claim. At trial, a central

---

[1] Each of the charged offenses requires that the state prove beyond a reasonable doubt that the defendant "recklessly" caused the death of another. See General Statutes §§ 53a-55 (a) (3) and 55a-56 (a) (1). In this context, the term "recklessly" is defined as a state of mind in which the defendant "is aware of and consciously disregards a substantial and unjustifiable risk . . . ." General Statutes § 53a-3 (13).

[2] The jury found the defendant not guilty of the first degree manslaughter charge.

[3] The defendant's initial sentence for the second degree manslaughter conviction was ten years incarceration, execution suspended after eight years, with three years probation. His sentence later was increased as a result of two prior findings of violation of probation.

tenet of the defense was that the defendant was traveling at or near the posted speed limit of 45 miles per hour as he entered the northbound lane to pass the slower moving vehicle in front of him. Both parties presented expert testimony as to the defendant's speed moments before the collision, focusing particularly on the time when the defendant first applied his brakes.[4] The state's expert, a specialist in accident reconstruction, testified that, according to his forensic and mathematical analyses, the defendant "was traveling at a minimal speed of 83 miles per hour." This determination was based primarily on the length of skid marks caused by the defendant's sudden braking, which measured over 360 feet, but also took account of the condition of the roadway at the time of the accident. The defense offered the expert testimony of a behavioral psychologist trained in principles of human reaction and response time. During recross-examination, the defense expert conceded that the length of the skid marks was consistent with a finding that the defendant was traveling 83 miles per hour at the moment when he began braking.

On December 11, 2008, the parties presented closing arguments to the jury. In both its initial and rebuttal arguments, the state implored the jury to infer that the defendant was driving recklessly at the time of the accident, from evidence such as the condition of the victim's bicycle, the extent of the injuries suffered by the victim and the condition of the defendant's car following the collision.[5] The defendant argues that

---

[4] The state also offered the lay testimony of two witnesses who observed the defendant's car shortly before the accident occurred. One testified that the defendant's car passed her vehicle at such a high rate of speed that her own car began to shake. Additionally, the driver of the vehicle that the defendant attempted to pass testified to the loud "screeching" sound that she heard seconds before the collision.

[5] The victim's bicycle was introduced as a full exhibit during the state's case-in-chief, and the victim's treating physician testified about the victim's injuries. The state also introduced photographs depicting the damage sustained by the defendant's car.

"these assertions and their evidentiary reliability were conjured out of thin air by the prosecutor . . . and, as a result, appeared to give the state more evidence than it actually had to prove its case."

Before addressing the merits of the defendant's argument, we begin with the applicable legal principles and standard of review. "[A] claim of prosecutorial impropriety, even in the absence of an objection, has constitutional implications and requires a due process analysis under *State* v. *Williams*, 204 Conn. 523, 535–40, 529 A.2d 653 (1987)." *State* v. *Gould*, 290 Conn. 70, 77, 961 A.2d 975 (2009). "Once prosecutorial impropriety has been alleged . . . it is unnecessary for a defendant to seek to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and it is unnecessary for an appellate court to review the defendant's claim under *Golding*. . . . The reason for this is that the touchstone for appellate review of claims of prosecutorial [impropriety] is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set out by this court in . . . *Williams* . . . ." (Internal quotation marks omitted.) *State* v. *Pascal*, 109 Conn. App. 55, 66, 950 A.2d 566, cert. denied, 289 Conn. 917, 957 A.2d 880 (2008). "In analyzing claims of prosecutorial impropriety, we engage in a two step process. . . . First, we must determine whether any impropriety in fact occurred; second, we must examine whether that impropriety, or the cumulative effect of multiple improprieties, deprived the defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Gould*, supra, 77.

"[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [impropriety]

has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based [on] the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . . Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case." (Internal quotation marks omitted.) Id., 78–79.

"If we conclude that prosecutorial impropriety has occurred, we then must determine, by applying the six factors enumerated in *State* v. *Williams*, supra, 204 Conn. 540, whether the entire trial was so infected with unfairness so as to deprive the defendant of his due process right to a fair trial. . . . These factors include the extent to which the impropriety was invited by defense conduct, the severity of the impropriety, the frequency of the impropriety, the centrality of the impropriety to the critical issues in the case, the effectiveness of the curative measures adopted and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Jordan*, 117 Conn. App. 160, 164, 978 A.2d 150, cert. denied, 294 Conn. 904, 982 A.2d 648 (2009). We address each of the alleged prosecutorial improprieties in turn.

A

The first claim of impropriety arises out of the state's initial closing argument. Specifically, the defendant

challenges the following statements of the prosecutor: "There's the bicycle, look at those spokes, look at how they're bent and mangled. How fast was that car going?"

We disagree with the defendant's contention that this argument invited speculation on the part of the jury. Although "[i]t would be improper for the prosecutor to comment during final summation on facts not introduced into evidence at trial," that is not this case. *State v. Lizzi*, 199 Conn. 462, 472, 508 A.2d 16 (1986); see also *State v. Ceballos*, 266 Conn. 364, 400, 832 A.2d 14 (2003) ("[a] prosecutor may invite the jury to draw reasonable inferences from the evidence; however, he or she may not invite sheer speculation unconnected to [the] evidence" [internal quotation marks omitted]). The "occasional use of [a] rhetorical [device]" falls within the rubric of "fair [comment]" by the prosecutor. *State v. Gould*, supra, 290 Conn. 78. In addition to viewing the victim's bicycle, the prosecutor properly reminded the jury to consider other physical and testimonial evidence, including expert testimony, that supported a reasonable inference that the defendant was speeding. For similar reasons, we reject the defendant's contention that expert testimony was needed to corroborate the inference that the extensive damage to the bicycle was caused by the speed with which the defendant was operating his vehicle. Accordingly, the defendant has failed to establish his first claim of prosecutorial impropriety. See *State v. Angel T.*, 292 Conn. 262, 274–75, 973 A.2d 1207 (2009) (describing first prong for review of prosecutorial impropriety claims as threshold consideration).

B

In the next claim of prosecutorial impropriety, also challenging a statement made during the state's initial closing argument, the defendant criticizes the prosecutor's references to the extensive physical injuries suffered by the victim. The defendant maintains that it

was improper for the state to argue that the medical evidence demonstrated that the defendant was "going in excess of 80 miles per hour" at the time that he struck the victim. Again, we are unpersuaded.

During trial, the treating emergency room physician testified in detail about the extensive injuries suffered by the victim on the evening of April 27, 2007. The prosecutor's statements merely suggested inferences that "the jury could have drawn entirely on its own." *State* v. *Stevenson*, 269 Conn. 563, 585, 849 A.2d 626 (2004). At no time did the prosecutor refer to facts that were not in evidence to bolster his argument, nor did the prosecutor imply that "the state had more evidence than it actually did . . . ." Thus, the state's references to the victim's injuries as probative of the defendant's excessive speed at the moment of the collision did not amount to prosecutorial impropriety.

## C

Finally, the defendant challenges the prosecutor's summary statement, made during rebuttal, that the state's evidence about the victim's injuries, the victim's bicycle, and the defendant's car, permitted the jury to infer that the defendant was driving 83 miles per hour at the time of the collision. Again, we are unpersuaded.

The challenged statement invited the jury to draw permissible inferences from the evidence bearing on the defendant's speed and did not invite unreasoned speculation on its part. Indeed, the prosecutor specifically told the jurors not to speculate, but to draw "reasonable inferences about what judgment calls should be made [and] what the *evidence* means." (Emphasis added.) See *State* v. *Felix*, 111 Conn. App. 801, 811, 961 A.2d 458 (2008) ("[i]t is not improper for a prosecutor to ask the jury to draw inferences and to exercise common sense"). Furthermore, following objection by defense counsel, the court indicated that it would provide

instructions about the meaning of reasonable inferences and how such inferences could (or could not) be drawn from the evidence. In fact, the court gave such instructions.[6] See *State* v. *Rivera*, 61 Conn. App. 763, 773, 765 A.2d 1240 ("[i]n the absence of an indication to the contrary, we presume that the jury followed the [curative] instructions given to it by the court"), cert. denied, 256 Conn. 901, 772 A.2d 559 (2001). We conclude that the defendant has failed to demonstrate that the state engaged in prosecutorial impropriety during rebuttal argument.

## II

The defendant next claims that the court improperly declined to instruct the jury that, with respect to the element of recklessness, a driver is entitled to rely on the expectation that others using the roadway, such as the victim, would obey the "rules of the road." We disagree.

The following additional facts and procedural history are relevant to the resolution of the defendant's claim. In his request to charge, dated December 9, 2008, the defendant asked the court to instruct the jury that as "an operator of a bicycle on a public highway," the victim "had an obligation under our statutes to obey all [of] the rules of the road that an operator of a motor vehicle would." Further, the defendant requested an instruction that the victim "was required . . . to operate his bicycle as near to the right side of the roadway as practicable" and to display a "[lighted] lamp [or]

---

[6] During its jury charge, the court explained: "There are a number of things that may have been seen or heard during the trial which are not evidence . . . . For example, the statements made by lawyers, including statements made in their closing arguments, are not evidence . . . . In drawing inferences from the *established facts*, you should use your reason and common sense. The inferences which you draw must be logical and reasonable." (Emphasis added.)

illuminating [device]" when operating the bicycle during foggy conditions.

On December 11, 2008, a charging conference was held in which the defendant articulated the relevance of his requested instructions. Defense counsel argued, with respect to the issue of recklessness, that "basically the standard that's being applied . . . is . . . a reasonable person's standard . . . [and] a reasonable person [namely, the defendant] . . . has the right to assume that" the victim would not be in the middle of the road without a headlamp on his bicycle. In reliance on *State v. Campbell*, 82 Conn. 671, 74 A. 927 (1910), the court stated that "if someone engages in criminal conduct, they're not relieved of their responsibility for [such] conduct [simply] because the victim may also have been negligent" or otherwise in violation of statutory mandates. Nonetheless, the court went on to emphasize that the defendant was free to argue that he "was unable to perceive [the victim] because of the fog, because of the dark clothing, because he suddenly appeared . . . because he didn't expect [the victim] to be there, and because of the [other] difficulties in perception." Moreover, in its jury charge on recklessness, the court instructed the jury that "the state must prove beyond a reasonable doubt that the defendant was aware of but consciously disregarded [a substantial and unjustifiable risk]. The state must further establish that disregarding that risk was a gross deviation from the standard of conduct that a reasonable person would have observed in the *defendant's situation*." (Emphasis added.)

"Our standard of review with regard to claims of instructional error is well established. [I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such

a way that injustice is not done to either party under the established rules of law. . . . [T]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Where . . . the challenged jury [instruction involves] a constitutional right, the applicable standard of review is whether there is a reasonable possibility that the jury was misled in reaching its verdict." (Citation omitted; internal quotation marks omitted.) *State* v. *Boyd*, 115 Conn. App. 556, 562–63, 973 A.2d 138, cert. denied, 293 Conn. 912, 978 A.2d 1110 (2009). In any case, "[a] request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. . . . Conversely, it also is true that a court is under no duty to give a requested jury instruction that is an improper statement of law. [Thus], if this court concludes that the requested jury instruction was an improper statement of law, the defendant is not entitled to the requested jury instruction and the court's refusal was proper." (Citation omitted; internal quotation marks omitted.) *State* v. *Scribner*, 72 Conn. App. 736, 740, 805 A.2d 812 (2002).

We agree with the court that *Campbell* governs this case and supports the court's denial of the defendant's request. *Campbell* is particularly instructive because its factual and procedural history closely resemble the case at bar. In *Campbell*, the defendant was convicted of manslaughter for striking and killing a pedestrian with his vehicle while speeding down a busy street in New Haven. *State* v. *Campbell*, supra, 82 Conn. 673. On appeal, the defendant claimed that the court improperly refused to instruct the jurors that he "had the right to assume that [the victim] would use reasonable care to avoid danger" while crossing the street. Id., 675. In rejecting the defendant's claim, our Supreme Court stated that "it is generally the province of the jury,

rather than of the court, to decide what one in the situation of the defendant, might reasonably have assumed with a view of regulating his own conduct. Statements . . . as to what may reasonably be assumed by individuals in given situations . . . are generally . . . conclusions of fact which . . . may be reached by a jury . . . rather than . . . established [rules] of law which" are to be read to the jury in the form of instruction. Id., 678.

Here, as in *Campbell*, the court clearly instructed the jury about the elements of the crimes with which the defendant was charged and the state's burden to prove those elements beyond a reasonable doubt. Id., 677. Of particular significance in this regard is the court's instruction that "[t]he law [in this case] requires [that the defendant engage in conduct that under the] circumstances [demonstrates an] extreme indifference to human life." This instruction properly permitted the jury to find that, by traveling at over 80 miles per hour on a residential road on a foggy and damp evening, the defendant had engaged in reckless conduct even before the victim entered the roadway.[7]

To adopt the defendant's argument that the victim's conduct must necessarily be considered in the course of evaluating recklessness would make the victim's behavior evidence of a defense, rather than a factor for the jury to consider in evaluating the defendant's mental state. Our case law in this regard is to the contrary. See *State* v. *Munoz*, 233 Conn. 106, 126, 659 A.2d 683

---

[7] Additionally, the defendant's "human factors" expert testified that the defendant perceived the victim approximately two seconds before he reacted by applying his brakes. Given the defendant's excessive speed of 83 miles per hour, his vehicle would have traveled several hundred feet before the defendant began braking, as measured by the beginning of the skid marks on the road. Thus, the testimony of the defendant's expert supported the inference that the defendant had perceived the victim several hundred feet farther south from where the skid marks began, regardless of the lack of a headlamp on the victim's bicycle.

(1995) ("[e]very person is held to be responsible for the natural consequences of his acts, and if he commits a felonious act and death follows, it does not alter its nature or diminish its criminality to prove that other causes co-operated to produce that result" [internal quotation marks omitted]); see also *State* v. *Alterio*, 154 Conn. 23, 29, 220 A.2d 451 (1966) (ruling that contributory negligence of the victim is no defense to charged mental state but is relevant only to the "issue of causation"); *State* v. *Leopold*, 110 Conn. 55, 61, 147 A. 118 (1929) ("[i]n a prosecution for manslaughter by the culpable negligence of the accused, the [s]tate is not obliged to prove that the deceased exercised due care to avoid the consequences of the unlawful act, and his failure to do so is not a defense available to the accused").

We conclude that the court's instruction to the jury on the element of recklessness "fairly [presented] the case to the jury in such a way that injustice [was] not done to [the defendant] under the established rules of law." (Internal quotation marks omitted.) *State* v. *Boyd*, supra, 115 Conn. App. 563. Accordingly, the defendant's claim of instructional error cannot be sustained.

### III

The defendant's final claim is that the court improperly refused to permit defense counsel to argue that the victim did not have a headlamp on his bicycle and that the court improperly refused to instruct the jury to consider the absence of a headlamp in its instructions on recklessness. We disagree.

### A

First, the defendant alleges that the court improperly refused to allow defense counsel to argue to the jury that the "lack of a headlamp drastically affected the

defendant's perception and reaction time." This is simply incorrect.

In the course of describing its jury charge during a charging conference, the court discussed both recklessness and intervening causation, especially as these concepts related to the absence of a headlamp on the victim's bicycle. The court dealt with these concepts separately. Addressing the issue of intervening causation, the court noted that "[it was] not going to allow [defense counsel] to argue, [and would not instruct the jurors, as to the lack of] a light on the bike." The basis for this ruling was the court's view that, to be admissible for purposes of intervening causation, the absence of a headlamp on the victim's bicycle would necessarily have had to have taken place after the defendant engaged in recklessness.[8] See, e.g., *State* v. *Munoz*, supra, 233 Conn. 124 ("[intervening causation] refers to a situation in which the defendant's conduct is a 'but for' cause, or cause in fact, of the victim's injury, but nonetheless some other circumstance *subsequently* occurs—the source of which may be an act of the victim, the act of some other person, or some nonhuman force—that does more than supply a concurring or contributing cause of the injury, but is unforeseeable and sufficiently powerful in its effect that it serves to relieve the defendant of criminal responsibility for his conduct" [emphasis added]).

In addressing the issue of recklessness, however, the court stated: "[T]he defendant is . . . free to argue the facts as you perceive the testimony to be, which is that [the defendant] was unable to perceive [the victim] because of the fog, because of the dark clothing, because he suddenly appeared. You're free to argue

---

[8] As the court specifically stated: "I've already indicated I'm not going to let you argue [the lack of a headlamp] because it is subsequent conduct or subsequent negligence by [the victim]" alleged to have occurred after the defendant engaged in recklessness.

that he didn't expect him to be there, you're free to argue that he wasn't able to react in time because he didn't expect him to be there and because of the difficulties in perception. You're free to argue all those facts. And I want to make it clear that [the court is] not preventing you from doing that."

Thus, we conclude that the court did not preclude defense counsel from arguing that the absence of a headlamp on the victim's bicycle contributed to the defendant's "difficulties in perception."[9] See *State* v. *Thornton,* 112 Conn. App. 694, 708, 963 A.2d 1099 ("If defense counsel [is] uncertain of the scope of the court's ruling, he should [ask] the court to clarify it. . . . Having failed to seek a clarification, the defendant cannot . . . successfully claim prejudice [on appeal]." [Citation omitted.]), cert. denied, 291 Conn. 914, 969 A.2d 175 (2009). Because the defendant's characterization of the court's ruling is inaccurate and unsupported by the record, the defendant cannot prevail on this claim of error.

## B

The defendant also asserts that the court improperly refused to "instruct the jury regarding the [absence of a] headlamp, [specifically] as it pertained to the element of recklessness." We disagree.

As previously discussed,[10] the court's charge with respect to recklessness adequately instructed the jury as to the meaning of this concept and the fact that the state was required to prove this element beyond a reasonable doubt. Moreover, consistent with our Supreme Court's ruling in *State* v. *Campbell,* supra, 82 Conn. 671, the court's recklessness instruction should

---

[9] The defendant has not raised the distinct issue of whether the court's refusal to allow argument as to the lack of the headlamp for purposes of intervening causation constituted error.

[10] See part II of this opinion.

not have included references to the victim's alleged negligence under the facts of this case, including the absence of a headlamp on the victim's bicycle. For the reasons articulated in part II of this opinion, the defendant's claim is meritless.[11]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] The defendant also makes the cursory claim that the court improperly omitted from its instruction on intervening causation specific mention of the absence of a headlamp on the victim's bicycle. Because the court properly concluded, however, that the absence of a headlamp on the bicycle could not constitute an intervening cause, no such instruction was necessary. See part III A of this opinion.