******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BRIAN S.* *v.* COMMISSIONER
OF CORRECTION
(AC 38359)

DiPentima, C. J., and Mullins and Flynn, Js.

*Argued January 30—officially released April 25, 2017*

(Appeal from Superior Court, judicial district of
Tolland, Oliver, J.)

*Michael W. Brown*, assigned counsel, for the appel-

lant (petitioner).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *David S. Shepack*, state's attorney, and *Angela R. Macchiarulo*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

MULLINS, J. The petitioner, Brian S., appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court erred in concluding that he failed to prove that his criminal trial counsel had provided ineffective assistance. We affirm the judgment of the habeas court.

The following facts and procedural history inform our review. After years of repeatedly sexually assaulting his minor daughter, the petitioner was arrested, charged, and convicted of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and one count of risk of injury to a child in violation of General Statutes § 53-21 (2).[1] This court affirmed the petitioner's conviction on direct appeal. *State* v. *Brian L. S.*, 129 Conn. App. 902, 19 A.3d 275, cert. denied, 302 Conn. 907, 23 A.3d 1246 (2011).

On September 17, 2014, the petitioner filed an amended petition for a writ of habeas corpus in which he alleged that his criminal trial counsel had provided ineffective assistance. After a trial, the court denied the petition. The court concluded that the petitioner failed to prove his claim because he failed to establish that counsel's performance had been deficient or that he was prejudiced by any alleged deficiencies. The court, thereafter, granted the petition for certification to appeal from the judgment denying the petitioner's habeas petition. This appeal followed.

On appeal, the petitioner claims that the court erred in concluding that he failed to prove his claim of ineffective assistance of criminal trial counsel. The plaintiff specifically claims: "The habeas court erred by finding that the petitioner's right to the effective assistance of counsel was not violated by counsel's failure to adequately challenge the medical evidence offered by the prosecuting authority from the complainant's colposcopic examination."[2] He asserts that counsel's ability to challenge the medical evidence was hampered by his failure to consult "with a qualified expert with specific expertise in forensic medical examinations of suspected child abuse victims . . . ." We are not persuaded.

Before analyzing the petitioner's claim, we set forth the applicable law and the standard of review governing claims of ineffective assistance of counsel. "When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . The issue, however, of [w]hether the representation [that] a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard. . . .

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . .

"As enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] . . . [a] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . A court can find against a petitioner, with respect to a claim of ineffective assistance of counsel, on either the performance prong or the prejudice prong . . . ." (Citations omitted; internal quotation marks omitted.) *Michael T.* v. *Commissioner of Correction*, 319 Conn. 623, 631–32, 126 A.3d 558 (2015).

"With respect to the performance prong of *Strickland*, we are mindful that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. . . .

"Similarly, the United States Supreme Court has emphasized that a reviewing court is required not simply to give [the trial attorney] the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as

[he] did . . . . [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; [but] strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 632–33.

Turning to the performance prong of the *Strickland* test, as applied to the present case, the petitioner contends that his "constitutional right to the effective assistance of counsel . . . was violated by his counsel's failure to consult with, retain, and present the testimony of a forensic pediatric gynecologist, or other qualified medical expert, with an expertise in investigating and evaluating child sexual abuse allegations." He contends that this information and testimony was necessary so that counsel could combat and adequately challenge the testimony offered by the state's witness, Edward C. Kavle, a pediatrician.

In response, the respondent, the Commissioner of Correction, argues that the petitioner's claim lacks merit because trial counsel consulted with Bernard Luck, a gynecologist, who had practiced for thirty-five years, and who had experience with child sexual abuse matters. The respondent contends that the petitioner failed to "carry his burden to prove that [his trial counsel had] performed deficiently by relying upon Dr. Luck, a highly experienced gynecologist with a background in examining children. In particular, the petitioner failed to present any competent evidence that Dr. Luck lacked the qualifications to render a reliable opinion in this case." We agree with the respondent.

The following additional facts are necessary. During the petitioner's criminal trial, the state had presented the testimony of its expert, Kavle. Kavle had testified that he had performed an examination of the victim, and that he discovered a full thickness tear of the victim's hymen at the 2 o'clock position. Kavle explained that this tear was consistent with child sexual abuse, but that it did not mean, necessarily, that it was caused by sexual abuse. Kavle also explained that he had used a colposcope to perform the examination of the victim, and that he had made a video recording of the colposcopic examination.[3]

During the habeas trial, the petitioner's criminal trial counsel, Jeffrey Beck, testified. Beck testified that he had "a pretty good recollection" of this case. He stated that in preparation for the petitioner's criminal trial, he had reviewed the victim's forensic interviews, the records from the Department of Children and Families, and the victim's psychiatric materials, including treatment notes and therapy notes. Beck testified that his theory of defense for this case was that the victim was fabricating the allegations, especially in light of the vic-

tim's admissions that she had made up some of the statements and allegations she had relayed to her therapist regarding the petitioner.

When Beck was asked if he had consulted with "a medical expert to help [him] evaluate the medical findings of child sexual abuse," Beck stated that he had consulted with Luck, a gynecologist with thirty-five years experience, including some experience in child sexual assault matters. Beck also stated that he had provided Luck with Kavle's report, that Luck had reviewed Kavle's report, and that Luck had confirmed Kavle's finding that "there was some blunt force trauma to the vaginal area of the [victim]." Beck also repeated his opinion that the best defense in this case was that the victim had fabricated her allegations of sexual abuse because the victim had admitted, even on the witness stand, that she had made up some of her allegations.

The petitioner also provided testimony from Jennifer Canter, a child abuse pediatrician. Canter explained that she was board certified in a subspecialty called "child abuse pediatrics" by the American Board of Pediatrics, which first began such board examinations for specialization in this area in 2009. Canter testified that she reviewed Luck's report and the video of the colposcopic examination, and that she disagreed with Luck's opinion. In Canter's opinion, the victim's hymen appeared "perfectly normal." The petitioner did not call Luck as a witness at his habeas trial.

The petitioner argues that Beck's performance was deficient because he failed to consult with and to present the testimony of a medical professional with expertise in investigating and evaluating child sexual abuse allegations. He contends that this failure by counsel made it impossible for counsel to challenge the testimony of the state's expert and his conclusions that there was evidence of blunt force trauma to the victim's hymen. We are not persuaded.

"[T]here is no per se rule that requires a trial attorney to seek out an expert witness. . . . Where trial counsel has consulted with such experts, however, but made the tactical decision not to produce them at trial, such decisions properly may be considered strategic choices. Furthermore, trial counsel is entitled to make strategic choices in preparation for trial." (Citation omitted; internal quotation marks omitted.) *Santos* v. *Commissioner of Correction*, 151 Conn. App. 776, 785, 96 A.3d 616 (2014).

"A trial attorney is entitled to rely reasonably on the opinion of an expert witness; see *Doehrer* v. *Commissioner of Correction*, 68 Conn. App. 774, 783, 795 A.2d 548, cert. denied, 260 Conn. 924, 797 A.2d 520 (2002); and is not required to continue searching for a different expert [or for multiple experts]. See *Santiago* v. *Commissioner of Correction*, 90 Conn. App. 420, 426, 876

A.2d 1277 (counsel was entitled to rely on expert opinion when determining that petitioner did not suffer from mental defect, and was not required to seek an indeterminate number of expert opinions before concluding that petitioner did not suffer from mental defect or disease), cert. denied, 275 Conn. 930, 883 A.2d 1246 (2005), cert. denied sub nom. *Santiago* v. *Lantz*, 547 U.S. 1007, 126 S. Ct. 1472, 164 L. Ed. 2d 254 (2006). [The court] cannot conclude that [counsel's] performance was deficient when [counsel] consulted with an expert witness regarding the victim's physical examination, yet reasonably concluded not to use the expert witness at trial after determining that such testimony would not benefit the petitioner's defense." *Stephen S.* v. *Commissioner of Correction*, 134 Conn. App. 801, 816–17, 40 A.3d 796, cert. denied, 304 Conn. 932, 43 A.3d 660 (2012).

Here, Beck testified at the habeas trial that the petitioner's theory of defense was fabrication. He explained that the defense was focused on the victim's recantations and her admissions that she had made up some of her allegations against the petitioner. The record of the habeas trial reveals that in preparation for the petitioner's criminal trial, Beck, in fact, did consult an expert, Luck, a gynecologist with thirty-five years experience, including experience with child sexual assault cases. Beck testified at the habeas trial that, after reviewing Kavle's report, Luck confirmed Kavle's findings that the medical evidence demonstrated that there was blunt force trauma to the victim's hymen.

Thus, after having consulted with Luck, and after having received Luck's confirmation of Kavle's finding, Beck then made a reasonable strategic decision not to present Luck's testimony at trial or to seek another opinion. Instead, he strategized that the best course of action was for the defense to focus on the victim's inconsistent statements and her recantations, rather than run the risk of bolstering the state's case with further damning evidence of injury to the victim's hymen.

The fact that the petitioner later was able to present testimony at his habeas trial from Canter, a different expert, perhaps more specialized than Luck, who disagreed with the conclusions of both Kavle and Luck, did not establish that counsel's performance was deficient for relying on Luck's expert opinion in preparation for the petitioner's criminal trial. See *Hinton* v. *Alabama*, U.S. , 134 S. Ct. 1081, 1089, 188 L. Ed. 2d 1 (2014) (although concluding that counsel's performance was deficient for failing to understand the resources available to the defense, United States Supreme Court clarified that "the inadequate assistance of counsel we find in this case does not consist of the hiring of an expert who, though qualified, was not qualified enough . . . [and specifying that] [w]e do not today launch federal courts into examination of the

relative qualifications of experts hired and experts that might have been hired" [citation omitted]).

Indeed, although the petitioner has argued that Canter was a better or more specialized expert, the petitioner has failed to demonstrate that Luck, a gynecologist with experience in child sexual assault cases, was not qualified to render an appropriate medical opinion concerning any gynecological injury to the victim possibly caused by sexual assault.[4]

Accordingly, on the basis of the record before us, we conclude that the petitioner has failed to demonstrate that counsel's performance at the petitioner's criminal trial was deficient. The petitioner simply has not shown that Beck's performance, wherein he consulted with and relied on the expert opinion of a medical professional with experience in this field, was not reasonably competent, or fell outside the range of competence displayed by lawyers with ordinary training and skill in the criminal law. Having so concluded, we need not examine whether any alleged deficiency was prejudicial. See *Hilton* v. *Commissioner of Correction*, 161 Conn. App. 58, 81, 127 A.3d 1011 (2015) (because both prongs of *Strickland* must be demonstrated for petitioner to prevail on ineffective assistance of counsel claim, failure to prove either prong is fatal), cert. denied, 320 Conn. 921, 132 A.3d 1095 (2016).

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the petitioner's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] The victim testified at the petitioner's criminal trial. Additionally, videotapes of her two forensic interviews were played for the jury and admitted into evidence during the petitioner's criminal trial.

[2] Stedman's Medical Dictionary (28th Ed. 2006), p. 413, defines a "colposcope" as an "[e]ndoscopic instrument that magnifies cells of the vagina and cervix in vivo to allow direct observation and study of these tissues."

[3] A video of the colposcopic examination was played for the jury, and Kavle explained his finding, in part, using the video.

[4] The habeas court specifically found that there was no competent evidence adduced at the habeas trial that Luck was underqualified to render a medical opinion upon which counsel reasonably could rely. After reviewing the record, we agree with this assessment.