******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# DAVID WEAVING *v.* COMMISSIONER
# OF CORRECTION
## (AC 39566)

Keller, Elgo and Flynn, Js.

*Syllabus*

The petitioner, who had been convicted of the crime of manslaughter in the second degree in connection with a motor vehicle accident in which the petitioner's vehicle struck and killed a child, filed a second petition for a writ of habeas corpus, claiming that his criminal trial counsel and his first habeas counsel had rendered ineffective assistance. The petitioner claimed that his trial counsel was ineffective in failing to present the testimony of an accident reconstruction expert and that his prior habeas counsel was ineffective in failing to advance that claim in the first habeas action. The habeas court rendered judgment denying the petition and, thereafter, denied the petition for certification to appeal, and the petitioner appealed to this court. *Held* that the habeas court did not abuse its discretion in denying the petition for certification to appeal; that court properly determined that the petitioner's criminal trial counsel was not deficient in failing to present unfavorable testimony from an accident reconstruction expert, as trial counsel made a reasonable, tactical decision to pursue an alternate theory of defense, and her representation of the petitioner resulted in an acquittal on the most serious charge against him, and because the petitioner's claim against his trial counsel failed, his claim of ineffective assistance on the part of his prior habeas counsel also failed.

Argued October 4—officially released December 12, 2017

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Sferrazza, J.*; judgment denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Samuel Allan Greenberg*, assigned counsel, for the appellant (petitioner).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Marc G. Ramia*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

ELGO, J. The petitioner, David Weaving, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. The petitioner contends that the habeas court abused its discretion by denying his petition for certification to appeal and by rejecting his claims that counsel at both his criminal trial and his first habeas proceeding rendered ineffective assistance. Having thoroughly reviewed the record, we conclude that the habeas court properly denied the petition for certification to appeal and, thus, dismiss the appeal.

The facts underlying the petitioner's criminal conviction are set forth in this court's decision on his direct appeal. "Shortly before 7 p.m. on April 27, 2007, the [petitioner] was driving his motor vehicle south on Route 69 in Prospect. In Prospect, Route 69 is a residential, two lane road, with one northbound and one southbound lane of travel. Although it was a foggy evening and the road surface was damp, the [petitioner] was traveling at approximately 80 miles per hour, well in excess of the posted speed limit of 45 miles per hour. As he crested a small hill near Radio Tower Road, the [petitioner] came upon another car traveling in his lane at or below the posted speed limit. Approaching a permitted passing zone, the [petitioner] accelerated and began to cross over into the northbound lane in order to pass the slower moving vehicle. Just as he was doing so, the [petitioner] noticed a young boy standing on the pedals of a bicycle near the center of the northbound lane. The boy was dressed in dark clothing, the bicycle he was riding was black and there was no headlamp on the bicycle. The [petitioner] immediately applied his brakes and attempted to steer back into the southbound lane in an effort to avoid hitting the boy. The [petitioner's] speed, however, coupled with the conditions of the roadway, made avoiding the boy impossible. The [petitioner's] vehicle collided with the bicycle, throwing the boy onto the hood and windshield and tossing debris along the side of the road. Despite the efforts of emergency medical personnel and physicians, the boy died from his injuries. The [petitioner] subsequently was arrested and charged with manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3) and manslaughter in the second degree in violation of [General Statutes] § 53a-56 (a) (1)." *State* v. *Weaving*, 125 Conn. App. 41, 43–44, 6 A.3d 203 (2010), cert. denied, 299 Conn. 929, 12 A.3d 569 (2011).

At the petitioner's criminal trial, "a central tenet of the defense was that the [petitioner] was traveling at or near the posted speed limit of 45 miles per hour as he entered the northbound lane to pass the slower moving vehicle in front of him. Both parties presented expert testimony as to the [petitioner's] speed moments

before the collision, focusing particularly on the time when the [petitioner] first applied his brakes. The state's expert, a specialist in accident reconstruction, testified that, according to his forensic and mathematical analyses, the [petitioner] 'was traveling at a minimal speed of 83 miles per hour.' This determination was based primarily on the length of skid marks caused by the [petitioner's] sudden braking, which measured over 360 feet, but also took account of the condition of the roadway at the time of the accident. The defense offered the expert testimony of a behavioral psychologist trained in principles of human reaction and response time. During recross-examination, the defense expert conceded that the length of the skid marks was consistent with a finding that the [petitioner] was traveling 83 miles per hour at the moment when he began braking." (Footnote omitted.) Id., 44–45. At the conclusion of trial, the jury found the petitioner not guilty of manslaughter in the first degree and guilty of manslaughter in the second degree. This court affirmed that judgment of conviction on direct appeal. Id., 57.

On August 31, 2009, the petitioner commenced his first habeas action, with Attorney Andrew J. Cates serving as habeas counsel. His operative petition for a writ of habeas corpus advanced nineteen claims of ineffective assistance on the part of the petitioner's criminal trial counsel, Attorney Cheryl Heffernan. In particular, the petitioner alleged that Heffernan was deficient in failing to "properly vet the credentials" of both "the human factors expert whose testimony she presented at trial," and "the accident reconstructionist retained by her" to determine whether they were "truly qualified to render opinions which contradicted and/or impeached the testimony of the State's accident reconstructionist . . . ." The petition also alleged that Heffernan "failed to instruct her accident reconstructionist to undertake an independent investigation into the accident, the conditions of the petitioner's motor vehicle, and the like . . . ."

A habeas trial followed, at which Heffernan testified. She explained that she had prior experience with accident reconstruction cases and was familiar with the techniques and methods utilized therein. Heffernan testified that, in handling such cases, she necessarily relies on experts. As she put it, "I am a lawyer. . . . I'm not an engineer. I'm not a reconstructionist. I have to rely on my experts." Prior to the petitioner's criminal trial, Heffernan obtained authorization from the state to procure experts on his behalf. She testified that she initially sought the assistance of Richard Hermance, an accident reconstruction expert, due to his solid reputation, and the fact that her law partner had utilized him "a number of times [and] found him to present very well [with] a tremendous amount of credibility and professionalism and skill . . . ." After securing his services, Heffernan furnished Hermance with copies of all the evidence

from the scene of the accident, including police reports, photographs and statements.[1]

Heffernan testified that, after Hermance reviewed the evidence, he notified her that he could not offer testimony to challenge the state's calculations with respect to the speed of the petitioner's vehicle. Heffernan nevertheless "talked to him numerous times and tried to see if [she] could work something out" to present his expert testimony. Although those efforts were unsuccessful, Hermance did suggest the retention of a human factors expert as the "best way" to proceed with the petitioner's defense. Heffernan then contacted Patrick McGuire, a human factors expert, who provided expert testimony at the petitioner's criminal trial that, irrespective of the speed of the petitioner's vehicle, the accident could not have been avoided. Heffernan's trial strategy was to rely on that testimony to establish that "regardless of the speed of [the] vehicle, that [the petitioner] could not have avoided striking this child because the child had been in the road improperly and it was a bad situation." In so doing, Heffernan sought to negate the elements of extreme indifference to human life and recklessness, which are essential to the charged offenses under §§ 53a-55 (a) (3) and 53a-56 (a) (1), respectively. As she testified, "[o]ur argument was that the speed is not what caused the accident. It was the circumstances that existed that were beyond [the petitioner's] control. He could not have reacted in time regardless of how fast he was going. . . . [T]hat's where the reaction time was relevant. So, [McGuire] was there to testify that [if the petitioner had been] driving at forty-five miles an hour, which . . . was the speed limit on that road, that he still would have hit this child."

In addition, Heffernan confirmed in her habeas testimony that she consulted with Hermance, her accident reconstruction expert, in challenging the expert evidence offered by the state. She testified, and the record confirms, that a *Porter* hearing[2] was held at her behest prior to the petitioner's criminal trial, at which the opinions offered by the state's accident reconstruction expert were scrutinized. At the conclusion of that hearing, the trial court concluded that the methodology of the state's expert was valid.

In its memorandum of decision on the petitioner's first habeas action, the court determined, as to all nineteen allegations of ineffective assistance, that the petitioner had not established "that he was prejudiced in any way." The court also rejected the petitioner's contention that Heffernan was deficient in failing to properly vet the credentials of McGuire and Hermance. The court then addressed the petitioner's claim that Heffernan failed to instruct Hermance to perform an independent investigation of the accident, stating in relevant part: "[T]he court finds [that] [t]he petitioner has failed

to prove any prejudice because the testimony by counsel was that after she consulted with her expert about the calculations and evidence and diagrams that she presented, the expert indicated [that he] would not be able to challenge the results of the state police. [Heffernan] also indicated that she and her investigator both went out and rechecked the measurements . . . that were provided by the . . . state police and the various diagrams, and the court took that testimony reasonably to indicate that since she raised no challenge, that she and her investigator also must have come up with similar or the same calculations. . . . [T]he petitioner has failed to present—and again, it's their affirmative obligation to provide and present evidence here that, if that evidence was presented, there would have been some different or more favorable result; the petitioner has failed to do that or to present that evidence, so either— again, for the reason that the petitioner has failed to present any evidence, the court finds the claim to be abandoned and it is dismissed. The small amount of evidence that was presented here all indicated that counsel had consulted thoroughly with her expert witness and simply was not able to get the results that the petitioner wanted, and the court finds that . . . there was no showing of deficient performance in counsel's respect on that issue." *Weaving* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-09-4003183-S, 2012 WL 6965414, *2 (October 2, 2012).

In addition, the court addressed certain claims regarding Heffernan's investigation of the accident reconstruction prepared by the state. In concluding that those claims were without merit, the court noted that "in all of these issues or questions regarding the troopers and their qualifications . . . [Heffernan] filed and litigated an entire *Porter* hearing, and if that doesn't seek to call into question the qualifications and conclusions raised by the state's expert witness, I don't know what does. I mean, that's a claim by counsel that says this is junk science or these people aren't qualified to testify to the conclusions they're giving [and should not be admitted into evidence]; she litigated that motion, the court denied the motion. And so, going all the way back to the *Porter* hearing, the court frankly finds that it's [unsure] what else the petitioner claims counsel should have done; she sought to keep the testimony, frankly, out of trial, and the court overruled that after a lengthy hearing on the officer's qualifications and the conclusions he reached. And so, that's an additional basis why any and all of the claims related to counsel's failure to properly cross-examine or question the state's expert witnesses and the police officers, who testified about accident reconstruction, have failed to be proven." Id., *4. Accordingly, the court denied the petition for a writ of habeas corpus. The petitioner did not appeal from that judgment.

The petitioner commenced a second habeas action in

2013. His amended petition for a writ of habeas corpus contained two counts of ineffective assistance. The first alleged that Heffernan was deficient in failing to present the testimony of an accident reconstruction expert at his criminal trial. In the second count, the petitioner alleged that Cates was deficient in failing to advance that claim in the first habeas action. At the subsequent habeas trial, the petitioner presented the testimony of only one expert witness, Kent E. Boots, an accident reconstructionist from California. On the basis of certain assumptions that he made regarding the petitioner's vehicle at the time of the accident, Boots opined that its speed "at the area of impact was somewhat less than the . . . conclusion that the state police . . . came to." Utilizing his own friction value, Boots estimated that the petitioner's vehicle was "travelling approximately forty-nine miles per hour at impact."

On cross-examination, Boots acknowledged, consistent with McGuire's expert testimony at the petitioner's criminal trial, that the accident would have occurred whether the vehicle was travelling forty-nine or eighty-three miles per hour. Boots further noted that, at the criminal trial, the petitioner had testified that he could not see over or around the vehicle in front of him just prior to the accident, and that he made the decision to pass that vehicle without being able to see if there was a hazard ahead. For that reason, Boots opined that, irrespective of the speed of the petitioner's vehicle, it would have been impossible for the petitioner to perceive the boy in the road when he attempted to pass in the opposite lane. On the basis of his training and experience as both a law enforcement officer and an accident reconstructionist, Boots also opined that it was not safe for the petitioner to enter the opposite lane in such circumstances.

By memorandum of decision filed July 25, 2016, the habeas court rejected the petitioner's claims. It stated: "[T]he dispositive flaw in the petitioner's accusation of legal incompetence by Attorney Heffernan is that she did, in fact, consult with an experienced and well-regarded accident reconstructionist, [Hermance], a person whom her law firm had utilized in other cases. Hermance reviewed the pertinent materials concerning the fatal accident and concluded that the state's expert opinion as to the petitioner's speed of about eighty-three miles per hour was correct. Based on that unfavorable conclusion, Attorney Heffernan chose to rely exclusively on the expert testimony of McGuire that the collision was inevitable even if the petitioner was traveling at the speed limit; i.e., speed did not contribute to causing the fatality. The petitioner presented no criminal defense expert who criticized Attorney Heffernan's decision. The court is unaware of any professional obligation of defense counsel to keep consulting with different experts until one can be found whose opinions comport with those desired by the defense. . . . Attor-

ney Heffernan sought advice from an appropriate source. She acted reasonably in relying on that advice, especially because Hermance's opinions matched those of the state's accident reconstructionist. Her approach of utilizing, instead, the human factor specialist appears to this court to have been professionally sound and resourceful and even a bit ingenious. Certainly, this tactic met or exceeded the skill possessed by ordinarily competent defense lawyers. Consequently, the court determines that the petitioner has failed to satisfy his burden of proving, by a preponderance of the evidence, that Attorney Heffernan's representation" was deficient. In light of that determination, the court also rejected the claim of ineffective assistance on the part of Cates. The court therefore denied the petition for a writ of habeas corpus. The petitioner then filed a petition for certification to appeal to this court, which the habeas court denied, and this appeal followed.

At the outset, we note that "[t]he standard of review and legal principles that govern our consideration of the petitioner's claims on appeal are well settled. The use of a habeas petition to raise an ineffective assistance of habeas counsel claim . . . was approved by our Supreme Court in *Lozada* v. *Warden*, 223 Conn. 834, 613 A.2d 818 (1992). In *Lozada*, the court determined that the statutory right to habeas counsel for indigent petitioners provided in General Statutes § 51-296 (a) includes an implied requirement that such counsel be effective, and it held that the appropriate vehicle to challenge the effectiveness of habeas counsel is through a habeas petition. . . . [T]he court explained that [t]o succeed in his bid for a writ of habeas corpus, the petitioner must prove *both* (1) that his appointed habeas counsel was ineffective, and (2) that his trial counsel was ineffective. . . . As to each of those inquiries, the petitioner is required to satisfy the familiar two-pronged test set forth in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . . In other words, a petitioner claiming ineffective assistance of habeas counsel on the basis of ineffective assistance of trial counsel must essentially satisfy *Strickland* twice . . . ." (Emphasis in original; internal quotation marks omitted.) *Abreu* v. *Commissioner of Correction*, 172 Conn. App. 567, 574–75, 160 A.3d 1077, cert. denied, 326 Conn. 901, 162 A.3d 724 (2017). Our Supreme Court has characterized that task as a "herculean" one. *Lozada* v. *Warden*, supra, 843.

Having reviewed the record of the present appeal, we can improve little on the habeas court's well reasoned

analysis. As this court previously has observed, "[a] trial attorney is entitled to rely reasonably on the opinion of an expert witness . . . and is not required to continue searching for a different expert." (Citation omitted.) *Stephen S.* v. *Commissioner of Correction*, 134 Conn. App. 801, 816, 40 A.3d 796, cert. denied, 304 Conn. 932, 43 A.3d 660 (2012). Moreover, it is well established that when a criminal defense attorney consults with "an expert in a relevant field" who thereafter apprises counsel that he or she cannot provide favorable testimony, counsel is "entitled to rely reasonably on [that] opinion . . . and [is] not required to continue searching for a different expert." Id., 817; see also *Brian S.* v. *Commissioner of Correction*, 172 Conn. App. 535, 544, 160 A.3d 1110 ("[t]he fact that the petitioner later was able to present testimony at his habeas trial from . . . a different expert, perhaps more specialized than [the expert originally consulted by his criminal trial counsel] . . . did not establish that counsel's performance was deficient for relying on [the original] expert opinion in preparation for the petitioner's criminal trial"), cert. denied, 326 Conn. 904, 163 A.3d 1204 (2017).

As the United States Supreme Court has explained in the context of ineffective assistance of counsel claims, "[t]he selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that, when made 'after thorough investigation of [the] law and facts,' is 'virtually unchallengeable.' " *Hinton* v. *Alabama*, U.S. , 134 S. Ct. 1081, 1089, 188 L. Ed. 2d 1 (2014); accord *Brian S.* v. *Commissioner of Correction*, supra, 172 Conn. App. 543–44 (rejecting claim of deficient performance when trial counsel consulted with expert, made strategic decision not to present his testimony at trial or to seek another opinion, and "strategized that the best course of action" was alternate theory of defense); *Bharrat* v. *Commissioner of Correction*, 167 Conn. App. 158, 170, 143 A.3d 1106 (rejecting claim of deficient performance when trial counsel consulted with expert but ultimately "made the reasonable, strategic decision not to call an expert witness at the underlying criminal trial"), cert. denied, 323 Conn. 924, 149 A.3d 982 (2016); *Stephen S.* v. *Commissioner of Correction*, supra, 134 Conn. App. 817 (emphasizing that "trial counsel is entitled to make strategic choices in preparation for trial"). The record in the present case indicates that, after consulting with an expert in accident reconstruction and utilizing his expertise to challenge the state's expert testimony in a pretrial *Porter* hearing, Heffernan made a reasonable, tactical decision to pursue an alternate theory of defense, rather than offering that expert's unfavorable testimony. The record also indicates that Heffernan's representation of the petitioner ultimately resulted in an acquittal on the most serious charge before the jury.

We conclude that the petitioner has failed to demonstrate that Heffernan rendered deficient performance

at his criminal trial. He has not established that Heffernan's conduct was not reasonably competent, or that it fell outside the range of competence displayed by lawyers with ordinary training and skill in the criminal law. Accordingly, the petitioner cannot prevail on his claims that his criminal trial counsel and his first habeas counsel rendered ineffective assistance. See *Abreu* v. *Commissioner of Correction*, supra, 172 Conn. App. 583 ("because the petitioner failed to establish that he had a viable claim of ineffective assistance of trial counsel, his assertion that his prior habeas counsel provided ineffective assistance by failing to raise that claim similarly lacks merit"). We therefore conclude that the court did not abuse its discretion by denying the petition for certification to appeal. See *Lozada* v. *Deeds*, 498 U.S. 430, 432, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991); *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994).

The appeal is dismissed.

In this opinion the other judges concurred.

[1] In her testimony, Heffernan acknowledged that, aided by an investigator, she conducted her own inspection of the scene of the accident, and the skid marks from the petitioner's vehicle in particular. She nonetheless testified that, because the scene had changed since the date of the accident and the skid marks had faded, that investigation was of no value.

[2] See *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998).