******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

RICARDO R. *v.* COMMISSIONER OF CORRECTION*
(AC 39578)

DiPentima, C. J., and Keller and Pellegrino, Js.

*Syllabus*

The petitioner, who previously had been convicted of one count of risk of injury to a child and two counts of sexual assault in the first degree, sought a writ of habeas corpus, claiming, inter alia, ineffective assistance of trial counsel. Specifically, the petitioner claimed, inter alia, that his trial counsel rendered ineffective assistance by failing to adequately cross-examine the state's expert witness and to consult with and present testimony of a forensic psychologist. The habeas court rendered judgment denying the amended habeas petition and, thereafter, denied the petition for certification to appeal, and the petitioner appealed to this court. *Held:*

1. The habeas court did not abuse its discretion in denying the petition for certification to appeal, the petitioner having failed to show that his claim was debatable among jurists of reason, that a court could have resolved the issue in a different manner, or that the question was adequate to deserve encouragement to proceed further.

2. The habeas court properly determined that the petitioner was not denied his right to effective assistance of counsel:

a. Trial counsel's decision not to retain or to consult with an expert witness in preparation for cross-examination of the state's expert witness did not result in deficient performance, as counsel's decision was supported by legitimate and reasonable strategies, and was made in the exercise of reasonable professional judgment; moreover, trial counsel's cross-examination of the state's expert witness was not deficient, as he elicited testimony consistent with a legitimate trial strategy, and the petitioner failed to show how counsel's line of questioning fell outside the range of competence displayed by lawyers with ordinary training and skill in criminal law.

b. The petitioner could not prevail on his claim that his trial counsel was deficient in failing to present expert testmiony in support of an alternative innocent explantation for the allegations of sexual abuse against the petitioner; trial counsel's decision not to retain or consult with an expert was supported by legitimate and reasonable strategies for doing so, the innocent explanations that the petitioner wanted his trial counsel to put forth were matters of common sense that did not mandate the use of an expert witness, and although trial counsel did not present those theories in the exact manner that the petitioner now preferred, trial counsel clearly elicited testimony consistent with those theories by calling into question the veracity of the allegations against the petitioner, who failed to demonstrate how counsel was deficient in failing to introduce those theories through expert testimony.

Argued September 6—officially released November 6, 2018

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Fuger, J.*; judgment denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Vishal K. Garg*, for the appellant (petitioner).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *Richard Colangelo, Jr.*, state's attorney, and *Jo Anne Sulik*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

KELLER, J. The petitioner, Ricardo R., appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The petitioner claims that the habeas court (1) abused its discretion in denying his petition for certification to appeal and (2) erred by failing to conclude that his criminal trial counsel provided ineffective assistance.[1] We disagree, and, accordingly, dismiss the appeal.

On direct appeal from the petitioner's underlying conviction, our Supreme Court set forth the following relevant facts that the jury reasonably could have found. "When S was approximately four months old, her mother, F, began a relationship with the [petitioner]. In 1996, when S was five years old, the [petitioner] and F moved into an apartment together. S grew up thinking of the [petitioner] as her father, and called him 'Papi,' which means 'dad' in Spanish. The [petitioner] and F subsequently had two children together, S's two half sisters, G and M. The [petitioner] also had fathered two children with his former girlfriend, J: a daughter, A, who was one year older than S, and a son, R. A and R lived with J, but they often stayed with S's family and the siblings saw each other at least every weekend.

"When F was away or at work, the [petitioner] watched the children. During that time, the [petitioner] engaged in a number of behaviors that made S feel uncomfortable, such as walking around the house naked. The [petitioner] also watched pornographic media while the children were home, and did not turn it off when they walked into the room while he was watching it. On one occasion, when S was in the third or fourth grade, the [petitioner] showed S a homemade videotape of himself and F engaged in various sexual acts. At times, the [petitioner] grabbed S's hand and placed it on his crotch, over his clothing. S was afraid of the [petitioner] because he hit her, particularly when he was drunk, and sometimes with a closed fist. On occasions, S also witnessed the [petitioner] hitting and punching F. A testified at the [petitioner's] trial, describing the effect that the [petitioner's] physical abuse had on the children's behavior: '[I]t seemed like we were always trying everything in our power to just do what he wanted so that we didn't have to get disciplined in that way.'

"One particular day, the [petitioner] made S and A play a 'modeling game.' During the game, the [petitioner] waited in the living room, while the children went into the bedroom where they had a box of costumes—dresses. They changed into the costumes, and, wearing no underwear as the [petitioner] had instructed, walked into the living room one at a time to be 'judged' by the [petitioner]. The [petitioner] told

them that he would pay money to whoever walked best like a model. When S came into the living room, the [petitioner] had S lie down on the couch, and he placed his hands under her dress, rubbing her vaginal area with his hands, telling her not to worry, because he had done the same thing to A. On two or three occasions after that, the [petitioner] made S play the modeling game without A. He warned S that if she told anyone what had happened, everyone would blame her and hate her for it.

"In 2001, F left the [petitioner] and moved into her mother's home with her three daughters. The [petitioner] moved into a studio apartment in a neighboring town, where F allowed S and her sisters to continue visiting and staying with him. During this time period, the [petitioner] continued periodically to grab S surreptitiously. On one occasion, when S was in the fifth grade, A and S, who had been playing outside, went inside to take a shower together. While they were in the shower, the [petitioner] walked into the bathroom, removed his clothes and got into the shower with the girls. He 'bathed' them, touching their private areas with his hands and made them do the same to him. At that time, S told no one what was transpiring between her and the [petitioner].

"In 2002, when S was approximately eleven or twelve years old, the [petitioner] and F reconciled and moved back in together. The [petitioner's] physical abuse of S continued, and the sexual abuse escalated significantly. The [petitioner] continued to touch S inappropriately, sometimes using his fingers to penetrate her vaginally. The [petitioner] also made S masturbate him with her hands and forced her to give and receive oral sex, striking her if she refused or tried to stop him. In December, 2002, S reported to a teacher at her school that the [petitioner] had hit her. As a result, S and her two sisters were removed from the home and placed with Kids In Crisis.[2] After one month, G and M were returned to the family home, while S was placed with her grandparents. Some time thereafter, when S assured officials that everything was 'okay' at home, she was returned to F and the [petitioner]. At that point, S did not tell F that the [petitioner] was sexually abusing her, nor did she report any sexual abuse to social workers with the department of children and families, who now visited the home. When S returned home, the [petitioner] initially refrained from abusing her. Once the social workers ceased monitoring the home, however, he resumed his physical and sexual abuse of S.

"In February, 2004, F once again broke off her relationship with the [petitioner], and she and the children moved out. Soon thereafter, A filed a complaint alleging that the [petitioner] had physically abused her, exposed the children to pornography, and made A and S shower with him and play the 'modeling game.' When the offi-

cials who were investigating the complaint questioned S concerning A's allegations, she confirmed that the [petitioner] had showered with A and S, and played the modeling game with them, but she did not discuss the sexual aspects of either incident, and she denied that the [petitioner] had touched her inappropriately in either instance. S did not tell investigators about the additional times that the [petitioner] had played the modeling game with her alone, and when investigators asked her if the [petitioner] had sexually assaulted her, she told them that he had not. After A filed her complaint, F did not allow the [petitioner] to see S, and F subsequently broke off contact with him.

"S first told F about the sexual abuse in June, 2007, and F reported the sexual abuse to the Greenwich police the next day. The state subsequently charged the [petitioner] in a substitute information with one count of risk of injury to a child in violation of [General Statutes] § 53-21 (a) (2), and two counts of sexual assault in the first degree in violation of [General Statutes] § 53a-70 (a) (1) and (2). The jury found the [petitioner] guilty on all counts. On January 7, 2010, the trial court sentenced the [petitioner] to twenty years incarceration on each count, with the sentences to run concurrently, followed by five years of special parole." (Footnotes altered or omitted.) *State* v. *Ricardo R.*, 305 Conn. 581, 584–87, 46 A.3d 139 (2012). Our Supreme Court affirmed the petitioner's conviction. Id., 594. Additional facts will be set forth as necessary.

On April 13, 2011, the petitioner, as a self-represented litigant, filed a petition for a writ of habeas corpus. On December 22, 2014, after being appointed counsel, the petitioner filed an amended petition alleging, in relevant part, that his representation by his criminal trial counsel, Attorney Wayne Keeney, was deficient because Keeney failed to adequately cross-examine, impeach, and challenge the testimony of the state's expert witness, Dr. Larry Rosenberg; that he failed to consult with and present testimony of a forensic psychologist; and that he failed to adequately present an alternative innocent explanation for the complainant's allegations of sexual abuse.[3] The petitioner's first hearing was declared a mistrial by *Oliver, J.*, and a new hearing on the amended petition was held by *Fuger, J.* The habeas court, in a sixteen page memorandum of decision, denied the petitioner's amended petition.[4] On August 22, 2016, the petitioner filed a petition for certification to appeal, which was later denied. That denial is the focus of this appeal.

I

The petitioner first claims that the habeas court improperly denied his petition for certification to appeal. We disagree. Our Supreme Court has made clear that an appellate court need not reach the merits of a habeas appeal following a denial of certification unless

the petitioner can demonstrate that the habeas court abused its discretion in doing so. *Simms* v. *Warden*, 229 Conn. 178, 187, 640 A.2d 601 (1994). In determining whether a habeas court abused its discretion in denying certification to appeal, the petitioner must demonstrate that the issues are "debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Henderson* v. *Commissioner of Correction*, 181 Conn. App. 778, 794–95, 189 A.3d 135, cert. denied, 329 Conn. 911, 186 A.3d 707 (2018).

In ascertaining whether the habeas court abused its discretion in a denial of certification case, "we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by this court for determining the propriety of the habeas court's denial of the petition for certification. Absent such a showing by the petitioner, the judgment of the habeas court must be affirmed." (Internal quotation marks omitted.) *Stephen J. R.* v. *Commissioner of Correction*, 178 Conn. App. 1, 7, 173 A.3d 984 (2017), cert. denied, 327 Conn. 995, 175 A.3d 1246 (2018).

For the reasons set forth in part II of this opinion, we conclude that the petitioner has failed to show that his claim is debatable among jurists of reason; that a court could resolve the issue in a different manner; or that the question is adequate to deserve encouragement to proceed further. We therefore conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal.

II

The petitioner claims that the habeas court improperly concluded that he received effective assistance of counsel. In particular, the petitioner argues that Keeney failed to "retain, consult with, [or] present testimony" of an expert witness. He argues that this failure constituted deficient performance because it resulted in trial counsel's failure to (1) "adequately cross-examine the State's expert"; and (2) "adequately develop and present an alternative innocent explanation for the complainant's allegation of abuse."[5] We do not agree.

"In *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's perfor-

mance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Internal quotation marks omitted.) *Vazquez* v. *Commissioner of Correction*, 128 Conn. App. 425, 430, 17 A.3d 1089, cert. denied, 301 Conn. 926, 22 A.3d 1277 (2011).

"To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Michael T.* v. *Commissioner of Correction*, 319 Conn. 623, 631, 126 A.3d 558 (2015). "We . . . are mindful that [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Hilton* v. *Commissioner of Correction*, 161 Conn. App. 58, 66–67, 127 A.3d 1011 (2015), cert. denied, 320 Conn. 921, 132 A.3d 1095 (2016); see also *Michael T.* v. *Commissioner of Correction*, supra, 319 Conn. 632.

"Similarly, the United States Supreme Court has emphasized that a reviewing court is required not simply to give [the trial attorney] the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as [he] did. . . . [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; [but] strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." (Internal quotation marks omitted.) *Brian S.* v. *Commissioner of Correction*, 172 Conn. App. 535, 539–40, 160 A.3d 1110, cert. denied, 326 Conn. 904, 163 A.3d 1204 (2017).

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the

underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Hankerson* v. *Commissioner of Correction*, 150 Conn. App. 362, 367, 90 A.3d 368, cert. denied, 314 Conn. 919, 100 A.3d 852 (2014).

A

The petitioner first argues that Keeney's performance was deficient because he failed to adequately cross-examine Rosenberg. In particular, the petitioner argues that Keeney's "inaccurate beliefs about the forensic psychology literature made it necessary for counsel to consult with a forensic mental health professional to prepare an effective cross-examination of Dr. Rosenberg." In addition, the petitioner argues that Keeney's cross-examination of Rosenberg was deficient because he was required, but failed, to rebut misleading suggestions made by Rosenberg through cross-examination. We disagree.[6]

Our Supreme Court has declined to adopt a bright line rule that an expert witness for the defense is necessary in every sexual assault case even when it may be helpful to the defense. *Michael T.* v. *Commissioner of Correction*, 307 Conn. 84, 100–101, 52 A.3d 655 (2012). In addition, this court has held in factually similar cases to the present action that the failure to retain or consult with an expert witness does not constitute deficient performance. See, e.g., *Grover* v. *Commissioner of Correction*, 183 Conn. App. 804, 821,      A.3d     (2018); *Victor C.* v. *Commissioner of Correction*, 179 Conn. App. 706, 719–20, 180 A.3d 969 (2018) (decision not to retain expert witness was not deficient in light of counsel's experience and training with regard to defending child sexual assault cases).

With those decisions in mind, we set forth additional relevant facts necessary for the disposition of this claim. At the habeas trial, the court determined that Keeney "was fully aware of the expert hired by the state . . . understood the testimony he was expected to give, and declined to hire an expert of his own."[7] Keeney testified at the habeas trial that he did not want to call a defense expert because he did not think it would register well with the jury; Keeney believed that any expert that he called would have largely agreed with Rosenberg's testimony, which he felt would have only reinforced both Rosenberg's testimony and the victim's credibility. Accordingly, Keeney believed it was best to allow Rosenberg to testify on direct examination to the general behavioral concepts exhibited by child abuse victims, and then cross-examine him and argue during his closing argument that Rosenberg could not say that any of these things had happened in this case because he lacked knowledge of the specific facts at issue in the

present case. Keeney explained that his strategy was to "point out the deficiencies in the testimony of [Rosenberg] as well as the many times the child had an opportunity to disclose the sexual activity . . . ."

Moreover, Keeney also testified that he did not want to call a defense expert to testify because he was concerned that the prosecution would then have an opportunity to cross-examine the expert by referring to the specific facts of the case, which he believed would be harmful to the petitioner's case. Keeney reiterated that he ran the risk of reinforcing testimony that the victim in this case already provided. The habeas court found that "Keeney did not want to hire an expert for the defense to discuss delayed and incremental reporting by child sex abuse victims, because it would necessitate informing that expert of some of the problematic specific actions of the petitioner. For instance, such an action would have necessitated highlighting the fact that his own client had entered a shower, nude, while two young females, including the victim, were showering and engaged in soaping them down." Accordingly, the habeas court concluded that Keeney's decision to forego hiring an expert was sound and strategic.

While the petitioner argues that Keeney's "inaccurate beliefs about the forensic psychology literature made it necessary for [him] to consult with a forensic mental health professional to prepare an effective cross-examination," it was incumbent upon the petitioner to overcome the presumption that, under the circumstances, his decision not to consult with an expert was done in the exercise of reasonable professional judgment. See *Brian S.* v. *Commissioner of Correction*, supra, 172 Conn. App. 540. The petitioner has failed to do so. The habeas court specifically found that Keeney "was fully aware of the expert hired by the state" and "understood the testimony he was expected to give." To the extent that the petitioner challenges this finding as clearly erroneous, the record demonstrates that Keeney testified that he observed Rosenberg testify in the past, had discussed his testimony with other colleagues in the legal community, and had previously consulted with sexual assault experts that he was considering hiring in other cases.

Additionally, the record demonstrates that Keeney's testimony at the habeas trial about his understanding of the relevant forensic psychology concepts, such as hypersexuality and grooming behavior, that the petitioner argues was "flatly contradicted" by Rosenberg, actually was largely consistent with Rosenberg's testimony. The petitioner argues that Keeney's knowledge of these concepts was "entirely inaccurate" because he testified at the habeas trial that child victims of sexual abuse adhered to a specific behavioral profile, that a child exhibiting hypersexuality and a child's disruptive behavior at school could be useful in determining

whether abuse occurred, and that grooming behaviors can be used to identify perpetrators. Although Rosenberg did testify that he was unaware of "one distinctive profile" by which to accurately identify abuse victims, he testified that hypersexuality, acting out, and grooming behavior are in fact consistent characteristics of child sexual abuse victims and their perpetrators. Based on the sound findings of the habeas court, and guided by this court's recent holdings, we conclude that under the circumstances of this case, trial counsel's decision not to retain or consult with an expert witness in preparation for cross-examination was supported by legitimate and reasonable strategies for doing so, and was made in the exercise of reasonable professional judgment.

The petitioner also argues that Keeney's cross-examination of Rosenberg was deficient because he was required, but failed, to rebut misleading suggestions made by the witness through cross-examination. This argument, however, fails to appreciate the wide array of possible strategies trial counsel is permitted to pursue during his questioning. See *Antonio A.* v. *Commissioner of Correction*, 148 Conn. App. 825, 832, 87 A.3d 600 (noting "attorney's line of questioning on examination of a witness clearly is tactical in nature"), cert. denied, 312 Conn. 901, 91 A.3d 907 (2014).

A careful review of the criminal trial transcript shows that Keeney elicited testimony consistent with a sound and legitimate trial strategy. In particular, he elicited from Rosenberg that his testimony was not based on any particular facts of the present case, that his testimony was rooted in generalities, and that a "good many of the things that [Rosenberg] described could not lead to sexual assault." Additionally, Keeney elicited from Rosenberg that he was not offering an opinion as to the credibility of the allegations in this case, in that the witness acknowledged the fact that he never interviewed S or A in the present case. Although the petitioner, with the benefit of hindsight, may now prefer that trial counsel had undermined Rosenberg's testimony and the prosecution's theories by eliciting additional information from Rosenberg, he fails to sufficiently demonstrate how the line of questioning Keeney actually pursued was not part of a sound trial strategy, or how it fell outside the range of competence displayed by lawyers with ordinary training and skill in the criminal law.[8] See *Michael T.* v. *Commissioner of Correction*, supra, 319 Conn. 632 (explaining that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way"). Accordingly, we conclude that Keeney's cross-examination of Rosenberg was not deficient.

B

The petitioner next argues that Keeney's "failure to present expert testimony in support of an alternative

innocent explanation for the complainant's allegations of abuse" constituted deficient performance. First, the petitioner argues that reasonably competent counsel would have explained that the antagonism toward the petitioner that was demonstrated by the complainant's overly anxious mother could have influenced the complainant to believe falsely that abuse occurred. Second, he argues that "reasonably competent counsel would have argued that the adolescent complainant fabricated the extent of the abuse in an attempt to deflect blame away from herself from her own behavioral and academic shortcomings." We find this argument unpersuasive.

The petitioner's argument is flawed for several reasons. First, as we concluded in part II A of this opinion, Keeney's decision not to retain or consult with an expert was supported by legitimate and reasonable strategies for doing so. Although the petitioner argues that Keeney had no strategic reason for not presenting an expert, he seems to overlook the soundness of Keeney's strategy. Keeney was reasonably concerned that presenting an expert could have reinforced both Rosenberg's testimony and the victim's credibility, and that presenting testimony from an expert would have afforded the state an opportunity to cross-examine the expert by means of the specific facts of the case, facts that were likely to be viewed as damaging to the petitioner's case. As our Supreme Court has noted, "[a]lthough an expert may have been helpful to the defense, there is always the possibility that an expert called by one party, upon cross-examination, may actually be more helpful to the other party." *Michael T.* v. *Commissioner of Correction*, supra, 307 Conn. 101.

Second, as the respondent Commissioner of Correction points out, the innocent explanations that the petitioner wanted Keeney to put forth are matters of common sense that do not mandate the use of an expert witness. While Keeney may not have presented these theories in the exact manner that the petitioner now prefers, it does not automatically dictate a conclusion that his performance was deficient. See *Harrington* v. *Richter*, 562 U.S. 86, 106, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) (explaining that "[r]are are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach"). Keeney pursued a strategy that focused largely on the victim's credibility; as he indicated, he wanted to point "out the deficiencies in the testimony of the state's expert as well as the many times the child had an opportunity to disclose the sexual activity . . . ." For example, he elicited testimony from the victim and her mother about the timing of the victim's allegations of sexual abuse, highlighting for the jury that the victim's disclosure of sexual abuse came around the time the victim had a baby and dropped out of school, and that the victim's mother thought that her

daughter's life was "off track." The victim also testified that her disclosure came around the time her mother and the petitioner had broken up, and after the petitioner became involved with another woman. Keeney then elicited testimony from Rosenberg that the preponderance of false allegations made by complainants are made in situations where there is a custody dispute or visitation dispute underway between the parents or where there is an acrimonious divorce or break up.

Furthermore, Keeney underscored during closing arguments all of the opportunities the victim had to disclose these sexual abuse allegations and had not done so. He then called into question the truthfulness of the mother's testimony, highlighted that she had a "fractured relationship" with the petitioner, and suggested that she had "animosity" for him. Although Keeney may not have framed his theory and arguments to the jury in the exact manner the petitioner now desires, Keeney clearly elicited testimony consistent with those theories by calling into question the veracity of the allegations against the petitioner. The habeas court noted that trial counsel made "a strong effort to cross examine the victim to undermine her testimony, pointing out delays in reporting and initial denials by the victim." The habeas court also found that Keeney conducted "a full cross-examination of this young victim and, while unsuccessful in convincing the jury of her mendacity, nevertheless performed admirably." We agree with the habeas court.

The petitioner was required to demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. Although the petitioner did point out these particular theories that Keeney could have pursued with a defense expert, he failed to demonstrate sufficiently how failing to introduce these theories through expert testimony made Keeney's performance unreasonable. See *Clinton S.* v. *Commissioner of Correction*, 174 Conn. App. 821, 828, 167 A.3d 389, cert. denied, 327 Conn. 927, 171 A.3d 59 (2017). Accordingly, we conclude that trial counsel's decision not to pursue these alternative theories that supported a not guilty verdict through expert testimony did not constitute deficient performance.

We therefore conclude that the petitioner has failed to show that his claim of ineffective assistance of counsel involves issues that are debatable amongst jurists of reason, that a court could resolve the issues in a different manner, or that the issues are adequate to deserve encouragement to proceed further. Accordingly, the habeas court did not abuse its discretion in denying the petition for certification to appeal with respect to these claims.

The appeal is dismissed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] The petitioner also claims that the habeas court failed to address or make factual findings with respect to his allegation that trial counsel failed to retain an expert to prepare for cross-examination of the state's expert, Larry Rosenberg, a psychologist, making the record inadequate for this court's review of his ineffective assistance of counsel claim.

As explained in this opinion, the petitioner is appealing from a judgment by the habeas court denying his petition for certification to appeal. After the petitioner filed the present appeal, the petitioner filed a motion for articulation on May 8, 2017, arguing that the habeas court failed to address whether an expert could have assisted counsel with preparing the cross-examination of Rosenberg. Pursuant to General Statutes § 52-470 (g) and Practice Book § 80-1, because Judge Fuger, who presided over the habeas trial, retired effective February 7, 2017, the motion was directed to Judge Bright who denied the motion after finding that it could not be addressed on the merits. See *Grover* v. *Commissioner of Correction*, 183 Conn. App. 804, 806 n.1, A.3d (2018). The petitioner asserts that because he is unable to supplement the inadequate record due to the retirement of Judge Fuger, this court should reverse the habeas court's decision and remand the case for a new habeas trial.

The petitioner argues that *Claude* v. *Claude*, 143 Conn. App. 307, 68 A.3d 1204 (2013), demands that a new habeas trial be granted. As we recently explained, though, *Claude* presented "the unique situation in which the trial court failed to provide this court with *any* articulation of its decision, even after being ordered to do so. . . . As it was impossible to divine the basis for the court's decision from its 'postcard order,' and because the plaintiff could not be faulted for the inadequate record, we remanded the case for a new hearing." (Citations omitted; emphasis added.) *Grover* v. *Commissioner of Correction*, supra, 183 Conn. App. 806 n.1 (declining to grant petitioner's request for new habeas trial). While the "unique circumstances" in *Claude* demanded that a new hearing be granted; *Claude* v. *Claude*, supra, 143 Conn. App. 312; the facts of this case do not demand such relief.

We recognize that a trial court must provide a reviewing court with the "necessary factual and legal conclusions" for review to be proper; *State* v. *Payne*, 121 Conn. App. 308, 314, 996 A.2d 302, cert. denied, 297 Conn. 919, 996 A.2d 1193 (2010); however, explanations of those conclusions need not be to the point of pedantry. Although the habeas court did not explicitly address whether the petitioner's trial counsel had performed deficiently for not consulting with an expert in preparation of the cross-examination of Rosenberg, it is clear that the habeas court implicitly rejected this claim when it determined that counsel had made a sound, strategic decision not to hire an expert for the petitioner's criminal trial. Accordingly, we conclude that Judge Fuger's unavailability is of no moment because the record is sufficient for us to reach the merits of this particular allegation.

[2] Our Supreme Court explained that Kids In Crisis "is an organization that provides crisis counseling and temporary shelter for children." *State* v. *Ricardo R.*, 305 Conn. 581, 586 n.5, 46 A.3d 139 (2012).

[3] In the petitioner's amended petition for a writ of habeas corpus, he also claimed that his constitutional right to effective assistance of appellate counsel was violated. This claim, however, was withdrawn on November 17, 2015.

[4] At the conclusion of the habeas court's memorandum of decision, it indicated: "The petition for a writ of habeas corpus is, therefore, denied and the petition dismissed." We ascribe the court's reference to a dismissal of the petition to be a scrivener's error. The memorandum of decision explicitly states in its discussion section that the "court disagrees with the position of the petitioner and will *deny the petition* and decline to issue a writ of habeas corpus." (Emphasis added.) We find no other indication in the court's memorandum of decision that supports a conclusion that the court dismissed the petition in whole or in part. Additionally, there are no special defenses filed that would justify a dismissal of the petition. Accordingly, we read the habeas court's order to be solely a denial of the petitioner's petition for a writ of habeas corpus.

[5] To the extent that the petitioner is challenging on appeal that trial counsel failed to adequately pursue the production and disclosure of certain confidential and privileged materials, to wit, the victim's school records, or that

the habeas court erred in excluding certain evidence offered by the petitioner, we deem these issues abandoned because they are inadequately briefed. *Jalbert* v. *Mulligan*, 153 Conn. App. 124, 133, 101 A.3d 279 (explaining that issues inadequately briefed need not be reviewed by appellate court), cert. denied, 315 Conn. 901, 104 A.3d 107 (2014).

[6] Accordingly, because we conclude that Keeney's performance was not deficient, we need not address the prejudice prong under *Strickland*. See *Antwon W.* v. *Commissioner of Correction*, 172 Conn. App. 843, 865, 163 A.3d 1223 (explaining that prejudice analysis is not germane to discussion when disposition of the case is resolved on performance prong), cert. denied, 326 Conn. 909, 164 A.3d 680 (2017). We note, however, that the habeas court concluded that the petitioner was not prejudiced by the trial counsel's representation of the petitioner. The habeas court found the following: "[I]t is clear that the first witness, the victim, clearly and consistently testified before this jury to all of the elements of the crimes of which the petitioner stands convicted. Trial defense counsel did make a strong effort to cross examine the victim to undermine her testimony, pointing out the delays in reporting and initial denials by the victim. Nevertheless, the victim comes across . . . as credible. . . . This habeas court is not convinced that the testimony of the forensic psychologists would [have] in any way undermined the victim's testimony. In other words, while there is some testimony and studies by psychology experts pertinent to the delayed and incremental reporting by victims of child sexual abuse that may be a great import on the field of psychology, such testimony is of limited, if any, use in a criminal trial."

[7] Keeney testified that he was familiar with Rosenberg and that he had "seen him testify before." He also testified that he had "discussed this testimony—this style of testimony with several of [his] colleagues who are . . . in the top tier, criminal defense attorneys in the state." Furthermore, when asked what Keeney's basis was for certain beliefs he had in regard to whether a child actually had been abused, he testified: "[b]ased on my handling of these types of cases before. I've had interaction with sexual assault experts in the past, discussed these matters with experts that I may have been considering hiring for my own cases, also observing the testimony of experts and discussing their effectiveness with other colleagues who practiced in the same strata, if you will, of criminal defense . . . ."

[8] We note that the petitioner did not call a legal expert at the habeas trial to discuss what the prevailing norms in Connecticut are with respect to consulting with or presenting testimony of a child sexual assault expert at trial. While the petitioner is correct that expert testimony is not necessarily required in every case raising a *Strickland* inquiry; *Evans* v. *Warden*, 29 Conn. App. 274, 280, 613 A.2d 327 (1992); presenting expert testimony may help a petitioner carry his burden in demonstrating deficient performance.

---